**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ISABELLE BRACEWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No._____ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

This case stems from second-degree chemical burns Plaintiff Isabelle Bracewell sustained while working in the Chattahoochee River National Recreation Area ("the Recreation Area"), a unit of the National Park Service, under the supervision of Recreation Area employee Dave Thomas. Ms. Bracewell brings this Complaint under the Federal Tort Claims Act, namely 28 U.S.C. § 2674.

## PARTIES

1.    Plaintiff Isabelle Bracewell is a resident of the State of Alabama.

2.    Defendant is the United States of America, its officers, agents, employees, and representatives (collectively referred to hereafter as "the Government").

-1-

## JURISDICTION, SERVICE, AND VENUE

3.    This Federal District Court has jurisdiction because this action is brought in compliance with 28 U.S.C. §§ 1346(b) and 2671-2680, commonly known as the Federal Tort Claims Act, which vests exclusive subject-matter jurisdiction of the Federal Tort Claims Act in Federal District Court.

4.    The Government may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure, by serving a copy of the Summons and Complaint on United States Attorney Theodore S. Hertzberg, U.S. Attorney for the Northern District of Georgia, by certified mail, return receipt requested, at his office:

> United States Attorney's Office
> ATTN: Civil Process Clerk
> 75 Ted Turner Drive SW
> Suite 600
> Atlanta, Georgia 30303

5.    Also pursuant to Rule 4(i) of the Federal Rules of Civil Procedure, service is effected by serving a copy of the Summons and Complaint on Pamela Bondi, Attorney General of the United States, by certified mail, return receipt requested:

> The Attorney General's Office
> Attn: Civil Process Clerk
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530

6.    Venue is proper under 28 U.S.C. §§ 1391(e)(1)(B) and 1402(b) because the complained-of events, acts, and omissions, which give rise to this claim, occurred in the Atlanta Division of the Northern District of Georgia.

## THE GOVERNMENT'S LIABILITY

7.    This case is commenced and prosecuted against the Government pursuant to 28 U.S.C. §§ 2671-2680, the Federal Tort Claims Act. Liability of the United States is predicated specifically on 28 U.S.C. § 2674 because Ms. Bracewell's personal injuries and other damages for which this complaint is made were proximately caused by the negligence, wrongful acts, and omissions of at least one employee and agent of the Government working at the Recreation Area, in Sandy Springs, Georgia, while acting within the scope of their office, employment, and agency under circumstances where the Government, if a private person, would be liable to Ms. Bracewell in the same manner and to the same extent as a private individual.

8.    The substantive law of the State of Georgia applies to this action.

9.    The Recreation Area is a unit of the National Park Service, which is a bureau of the U.S. Department of the Interior.

10.    The Department of the Interior, in turn, is an agency of the United States of America.

11.    At all times material to this action, the Government, through the Department of the Interior, owned, operated, and controlled the Recreation Area and staffed it with its agents, servants, and employees.

12.    Also at all times material to this action, all those who committed tortious acts in the events underlying this action were agents, servants, and employees of the Department of the Interior, the Government, or some agency thereof, and were at all material times acting within the course and scope of such employment, including, but not limited to, Dave Thomas, who at all material times was a full-time employee of the U.S. Government.

## JURISDICTIONAL PREREQUISITES

13.    Pursuant to 28 U.S.C. §§ 2672 and 2675(a), Ms. Bracewell's claims set forth herein meet all jurisdictional prerequisites, including timely administrative presentment.

14.    Ms. Bracewell presented a Form 95 administratively to the Government. (Bracewell Form 95, attached hereto as Exhibit 1). The claims set forth in this Complaint were delivered to the Department of the Interior on December 2, 2024. (Receipt of Delivery of Form 95, attached hereto as Exhibit 2). The Government acknowledged receipt of the claims on December 23, 2024. (Department of Interior Acknowledgment, attached hereto as Exhibit 3).

15.     The Government, however, failed to make final disposition of Ms. Bracewell's claims within six months after the claims were filed. The Government thus denied said claims. *See* 28 U.S.C. § 2675(a).

16.     This suit has been filed after the administrative presentation and final denial of Ms. Bracewell's Form 95. Accordingly, under 28 U.S.C. § 2675(a), Ms. Bracewell has complied with all jurisdictional prerequisites and conditions before commencing and prosecuting this suit.

## FACTUAL BACKGROUND

17.     On Friday, July 5, 2024, Ms. Bracewell was interning for private nonprofit American Conservation Experience (ACE) as part of a team removing graffiti from a rock face within the Recreation Area. (ACE Incident Report, attached as Exhibit A to Ms. Bracewell's Form 95, attached hereto as Exhibit 1, p. 2).[1]

18.     The intern team was supervised by Mr. Thomas, the Recreation Area's volunteer coordinator. (Ex. 1A, p. 2).

19.     Mr. Thomas was not approved by ACE to supervise ACE interns. At all times material to this action, ACE contracted with the National Park Service (NPS) to supply volunteers to NPS on the condition that NPS abide by

---

[1] Hereafter this exhibit will be referred to as Exhibit 1A. Additionally, Exhibit B to Ms. Bracewell's Form 95, Exhibit 1 hereto, will be referred to as Exhibit 1B, Exhibit C to Ms. Bracewell's Form 95 will be referred to as Exhibit 1C, and so on.

the terms of its contract with ACE, including using only ACE-approved intern supervisors. ACE never approved Mr. Thomas to supervise interns.

20.    On the morning of July 5, 2024, the team led by Mr. Thomas, including Ms. Bracewell, prepared the materials for the day before heading to the work site. (Ex. 1A, p. 2).  The team brought backpacks of tap water, the chemical to remove the graffiti, and disposable nitrile gloves. (Id.).

21.    When the team got in the truck to head to the work site, Ms. Bracewell asked Mr. Thomas about the cleaning chemical they were going to use. (Ex. 1A, p. 2). She asked him what it was, how toxic it was, and what personal protective equipment (PPE) the team would have. (Id.). Mr. Thomas's only response was that he had only one pair of eye protection glasses, despite the fact that four people were planning to work at the site. (Id.).

22.    Upon arrival at the work site, the team poured some of the cleaning chemical, called Elephant Snot, into small containers to distribute to the team. (Ex. 1A, p. 2). Mr. Thomas gave the team small sponge brushes to apply the chemical. (Id.). The brushes dissolved upon contact with the chemical. (Id.).

23.    When Ms. Bracewell saw this, she immediately notified Mr. Thomas. (Ex. 1A, p. 2). She removed and replaced her gloves and recommended that the other team members do the same. (Id.).

24.     Mr. Thomas responded, "this is what we have to use," and that he would go to Home Depot to get better brushes. (Ex. 1A, p. 2). Mr. Thomas then left while the rest of the team, including Ms. Bracewell, continued to work. (Id.).

25.     While the team continued to work, the nitrile gloves blistered, changed color, and disintegrated on the hands of the team members, including Ms. Bracewell. (Ex. 1A, p. 2). When Ms. Bracewell removed her gloves, she felt a stickiness on her hands which she could not remove. (Id.).

26.     By around 11 am, Ms. Bracewell had begun to experience skin irritation in her hands and fingers. (Ex. 1A, p. 2). During the team's lunch break, she washed herself off as best she could, but her hands were still sticky. (Id.).

27.     Several times Ms. Bracewell told Mr. Thomas, who by this time had returned from Home Depot, that she was uncomfortable continuing to clean without better PPE. (Ex. 1A, p. 8). Each time Ms. Bracewell said this, Mr. Thomas dismissed her concerns and said, "we just have to do it." (Id.).

28.     Mr. Thomas also failed to monitor and supervise the work team, and, when Ms. Bracewell stated in front of him that she was concerned about the long-term effects of the cleaning chemical, Mr. Thomas responded, "I already had kids, so I'm not worried about that. I guess you might be." (Ex. 1A, p. 8). Mr. Thomas repeatedly joked about the chemical's harmfulness. (Id.).

29.    After the lunch break, Ms. Bracewell, Mr. Thomas, and the remaining team members returned to the work site. (Ex. 1A, pp. 2-3). Because of the pain in her hands, Ms. Bracewell took "rinsing duty." (Id., p. 3). She rinsed until about 2:30 pm, when the team ran out of rinsing water. (Id.).

30.    When another volunteer offered to go refill the water packs, that volunteer and Ms. Bracewell grabbed packs to go refill them. (Ex. 1A, p. 3). Due to the rocky nature of the work site, the other volunteer had to pass the pack down the rocky stairs to Mr. Thomas, who then used his chemical-covered, gloved hands to place the pack on Ms. Bracewell's back. (Id.).

31.    Unbeknownst to Ms. Bracewell, Mr. Thomas' chemical-covered gloves coated the underside of the right pack strap with the cleaning chemical, which then was in contact with Ms. Bracewell's skin for over an hour. (Ex. 1A, p. 3). By 3 pm, Ms. Bracewell felt burning on her shoulder and back. (Id.).

32.    Due to an approaching storm and other hazards at the work site, the team left the site to return to headquarters. (Ex. 1A, p. 3). Once the team got back to headquarters, Ms. Bracewell immediately went home so that she could wash off and try to treat her burns. (Id.).

33.    After her shower at home, Ms. Bracewell noticed a five-inch by two-inch, blistering burn on her shoulder. (Ex. 1A, p. 3; Burn Pictures, attached hereto as Exhibit 1B). Over the weekend, Ms. Bracewell's burns

continued to increase in severity, until Monday, July 8, 2024, when she could seek professional medical treatment. (Ex. 1A, p. 3).

34.    On July 8, 2024, Ms. Bracewell went to the emergency department (ED) at Emory Healthcare, where she was diagnosed with chemical burns. (July 8 ED Visit Records, attached hereto as Exhibit 1C). The charges for that ED visit alone amounted to $3,095.00. (July 8 ED Visit Bills, attached hereto as Exhibit 1D).

35.    The same day, Ms. Bracewell went to the Piedmont Urgent Care to receive treatment for her burns. (Piedmont Urgent Care Record, attached hereto as Exhibit 1E).

36.    As a result of the above-described incident in the Recreation Area, including the prolonged contact between the toxic cleaning chemical and Ms. Bracewell's skin, Ms. Bracewell suffered second-degree burns to her hands and right shoulder. (October 4 Doctor's Visit, attached hereto as Exhibit 1F, p. 1).

37.    On September 5, 2024, Ms. Bracewell received treatment from dermatologist Randi Goldstein, M.D., for her burns. (Dr. Goldstein Bill, attached hereto as Exhibit 1G). For that visit Ms. Bracewell incurred charges in the amount of $167.91. (Id.).

38.    Further, as a result of the burn on her right shoulder, Ms. Bracewell suffered and continues to suffer from nerve pain in her right shoulder and right breast. (Ex. 1F, pp. 1-2). Also as a result of this incident and

Ms. Bracewell's consequent mental stress, she suffered several months of anovulation. (Id., p. 3).

39.    This incident and Ms. Bracewell's resulting injuries further caused Ms. Bracewell to miss work. (Ex. 1A, p. 7).

40.    On October 29, 2024, Ms. Bracewell went to Concentra Urgent Care, in Marietta, Georgia, for her injuries from this incident. (Concentra Medical Records, attached hereto as Exhibit 1H). At Concentra Dr. Paul Horner, M.D., diagnosed her with paresthesia in both of her hands, in addition to her previously diagnosed burns. (Id.). Dr. Horner also referred Ms. Bracewell to a neurologist. (Id., p. 2).

41.    After this incident, the Recreation Area published a "Safety Lessons Learned" sheet, summarizing this incident, the errors committed by Mr. Thomas, and lessons learned from the incident. (Safety Lessons Learned, attached hereto as Exhibit 1I).

42.    Regarding this incident, the "Safety Lessons Learned" sheet explains:

> The Elephant Snot was splashing off the rock during brushing, melting the nitrile gloves, getting on hands, and into faces and mouths of the participants. *Concerns about the safety of the Elephant Snot began to get voiced.* As work continued, the paint brushes began to melt when in contact with Elephant Snot. The work leader [Mr. Thomas] left the work site to go to Home Depot and get new bristle paintbrushes for application *but did not get missing or additional PPE.*

(Ex. 1I (emphasis added)).

43.    The same sheet also identifies as "factors relevant to the lessons learned": "[n]o formal safety briefing occurred, and *appropriate PPE was not provided*;" and "[e]ven when issues arose (paint brush and glove degradation) *work still continued.*" (Ex. 1I (emphasis added)). Two of the sheet's "lessons learned" are: "Prioritize safety, even if the job remains incomplete . . . ," and "*[a]lways use the correct PPE.*" (Id. (emphasis added)).

44.    The document acknowledges that this incident "resulted in *severe* injuries (chemical burns) to an individual [Ms. Bracewell] . . . ." (Ex. 1I (emphasis added)).

45.    On October 4, 2024, the Superintendent of the Recreation Area, Ann Honious, emailed Ms. Bracewell to acknowledge her severe injuries, to notify her of the Federal Tort Claims Act, and to outline procedures for submitting a Standard Form 95. (Honious Email, attached hereto as Exhibit 1J).

### COUNT 1: NEGLIGENCE / *RESPONDEAT SUPERIOR*

46.    Ms. Bracewell incorporates the above paragraphs as if fully set forth herein.

47.    As stated above, at all times material to this action, Mr. Thomas was a full-time employee of the Government and was acting in the course and scope of his Government employment.

48.    The Government's employee and agent, Mr. Thomas, had a duty not to injure the interns he was supervising in the Recreation Area, including Ms. Bracewell.

49.    Further, the Government's employee and agent, Mr. Thomas, within the authorized time and space limits designated by the Government and with a desire to serve the Government, breached the above duty by:

a.    giving Ms. Bracewell and her coworkers a toxic cleaning chemical for graffiti removal but failing to provide adequate PPE to work with said chemical;

b.    dismissing the concerns voiced repeatedly by Ms. Bracewell and others about the cleaning chemical's toxicity and the lack of adequate PPE; and

c.    insisting that Ms. Bracewell and her co-interns continue to work despite the lack of adequate PPE and Ms. Bracewell's showing signs of chemical burns.

50.    The negligence of the Government's employee and agent, Mr. Thomas, was the proximate cause of the chemical burns and other, above-described injuries and damages sustained by Ms. Bracewell.

51.    Moreover, as stated above, the NPS was required by its contract with ACE to use only ACE-approved intern supervisors, and Mr. Thomas was not an ACE-approved intern supervisor. Thus, Mr. Thomas's supervising Ms.

Bracewell and the other interns during this incident constituted a breach by NPS of its contract with ACE. For that reason, Ms. Bracewell cannot be deemed a statutory employee or borrowed servant of the Government or the NPS.[2]

52.    For these reasons, the NPS, and, by extension, the Department of the Interior and the Government, are liable to Ms. Bracewell for negligence under the Federal Tort Claims Act.

## DAMAGES

53.    As a proximate result of the Government's tortious acts, Ms. Bracewell has suffered serious and substantial injuries, permanent impairment, past and future medical expenses, and past, present, and future physical and mental pain and suffering.

54.    Ms. Bracewell hereby pleads for all damages available to her under Georgia state law, federal law, and equity.

## CONCLUSION

Ms. Bracewell requests that the Government be cited to appear and answer this Complaint; that, upon final trial and hearing, Ms. Bracewell have judgment against the Government for the amount of her damages; and for such other and different amounts as she shall show by proper amendment before

---

[2] As an employee of ACE, a private nonprofit, Ms. Bracewell also was not a federal employee.

trial; for post-judgment interest at the applicable legal rate; for all Court costs

incurred in this litigation; and for such other and further relief, at law and in

equity, both general and special, to which Ms. Bracewell may show herself

entitled and to which the Court finds her deserving.

Respectfully submitted on July 24, 2025.

**GRIFFIN DURHAM
TANNER & CLARKSON, LLC**

/s/ *Sam Mikell*
J. Thomas Clarkson
Georgia Bar No. 656069
tclarkson@griffindurham.com
75 14th Street NE, Suite 2130
Atlanta, GA 30309
Phone: (203) 240-0208

Samuel L. Mikell
Georgia Bar No. 241146
smikell@griffindurham.com
122 East 38th Street
Savannah, GA 31401
Ph/Fax: (912) 867-9140

*Counsel for Plaintiff Isabelle Bracewell*